**LEMELLE v. ALLEN et al.**

**No. 1121.**

Court of Appeal of Louisiana. First Circuit.

March 7, 1933.

T. Arthur Edwards, of Lake Charles, for appellant.

Robert R. Stone, of Lake Charles, for appellees.

MOUTON, Judge.

In this case the district judge rendered the following opinion rejecting the plaintiff's demand:

"A long series of business transactions involving Victoria Lemelle and her former husband, Gilbert Lemelle, colored people, together with John W. Allen, a white man, culminated in the purported sale by Victoria Lemelle to Allen of her real property, and its subsequent transfer to Gilbert Lemelle. The property had belonged to the community formerly existing between Victoria and Gilbert, and, at its dissolution, had fallen to Victoria in the partition of the effects, subject to a mortgage of $700, to be paid by the former spouses in equal proportions. The later act of transfer to Allen states $1,038 as the consideration; and his transfer to Gilbert states the same amount. Victoria received no cash, but is said to have sold the property in payment of indebtedness claimed against her by Allen.

"Alleging fraudulent collusion between Allen and Gilbert, to deprive her of her property, that she owed Allen nothing at the time of its purported transfer to him, and setting forth in detail the various transactions by which the alleged frauds were perpetrated, Victoria prays for judgment recognizing her as the owner of the property, and in the alternative, for accounting and for money judgment.

"The restaurant building and lot which fell to Victoria at the liquidation of the Lemelle community carried a mortgage balance due of $700. To secure to her the one-half of this incumbrance assigned to Gilbert, he executed notes for $350, secured by a mortgage upon the property belonging to him, and delivered them to Victoria. She transferred these notes to Allen, who claims to have paid her $275 in cash and credit on other obligations. She was already indebted to him at the time for other items, to be discussed later, and claims that she delivered the notes at their face value, to apply on this indebtedness, and that she received no credit for them.

"Allen and another white witness, who says he was auditing Allen's books at the time, say that Victoria came to the store, delivered the notes, and received the cash. They both recount the details, including the statement that Allen left the store to get the money, because he did not have the amount at hand. Victoria, of course, denies all of this. Counsel argues that her denial is strongly supported by the circumstance that she was already indebted to Allen on obligations falling due monthly or oftener, and that it is unreasonable to suppose that he would be paying her cash when cash was due from her to him. But he was not paying her; he was buying notes of a third person, well secured, and at a bargain. The probability that cash was actually given at that time for them is increased by the fact that Victoria soon afterwards embarked in the restaurant business, at considerable outlay, and that no other source of capital for the venture is disclosed.

"The conclusion is that the testimony of the two witnesses, together with these circumstances, and the known improvidence of most colored people, which prompts them to prefer the immediate penny to the prospective dollar, outweigh the denial of Victoria. It follows that, having negotiated Gilbert's notes, held as surety for payment of one-half of the incumbrance on her property, and he, having become obligated for their payment to a third possessor his obligation to Victoria as to the mortgage on her property, was discharged, and she became solely obligated for its payment.

"Meanwhile, Victoria executed a second mortgage in favor of Allen, affecting her property, and used the proceeds in the construction of a three room and porch addition to the building. Allen was the contractor, and received for his work thirty-four notes, payable monthly, and secured by the mortgage. Another note of $122.50 was also executed, and delivered to Allen, secured by a chattel mortgage on the furniture and fixtures of the restaurant. Allen claims that this represented the contract price of painting the entire building, including the new addition. Victoria claims that there was but one contract for all of the work, and that the total cost was represented by the series of notes aggregating $685.

"It is shown that at about the time Victoria sold the Gilbert notes to Allen, she retired four $20 notes of the second mortgage, and paid Allen $75 in cash. Allen says that these amounts were retained by him out of the price which he paid for Gilbert's notes,

and that the cash payment was applied on his second mortgage of $685. The balance of $105, paid by him for Gilbert's notes, was delivered in cash to Victoria. Whether this be true, or whether Victoria paid these amounts in cash, is immaterial, since it is clear that she received full credit on obligations owed by her.

"The remaining credits to which she is shown to be entitled are represented by notes aggregating $440 in principal, of the $685 series, marked 'paid,' and held by her, and four of the same series said to have been paid out of the purchase price of $100 paid by Allen for a 14-foot portion of the restaurant lot.

"In addition to these principal credits, Victoria has, of course, paid considerable sums in interest, as well as suffering a loss of $75 on the transfer of Gilbert's notes to Allen. Her total credits on principal, acknowledged by Allen, are $600. Her total charges consist of the community mortgage, of which she owed a balance of $700, the second mortgage of $685, and the chattel mortgage of $122.50, the three items amounting to $1,507.50 in principal. Deducting the credits, there remains a principal indebtedness of $907.50. To this is added by Allen interest up to the date of the transfer to him of the restaurant property, which he calculated at $131.50, making the total stated consideration of $1,038 for the transfer.

"The only charge which is seriously disputed by Victoria is the item of $122.50, secured by mortgage of furniture and fixtures, and claimed by Allen to represent the cost of painting the restaurant building. It is difficult to understand why Victoria would have executed the mortgage and note for this amount if, as she contends, the cost of the painting was included in the contract of $685 for the construction of the addition to the building. She is fairly intelligent, more accustomed to business than most negro women, and there is no reason to presume that she did not know that in executing this instrument she was acknowledging indebtedness incurred and benefits received.

"At a later time, when Allen had removed to Texas, and left no instruments here except these claims against Victoria, he was anxious to close them out, and returned to Lake Charles for that purpose. Calculations were made of the amount of the claims, and Victoria executed in blank, a transfer of her property, including the furniture and fixtures, for the amount shown in the calculation. The attorney committed an error in describing the moveables, and Victoria was subsequently brought to his office to execute a new act. This she did, without protest, and after full reading and explanation, as testified by the attorney and his stenographer. Here again there is no reason to assume that she was ignorant of the meaning and effect of her act. She testifies, in effect, that she was led to believe that this transaction was intended as a simulation, adjusting the title to her property, so that she and Gilbert could control it, and apparently, as she thought, so they might become reconciled as husband and wife. Her ideas on this line are too vague to class as evidence, and find no support anywhere in the record. Nor is there any evidence at all of collusion between Allen and Gilbert to defraud Victoria. It is probable that no charge of such collusion would have been made if Allen had not transferred the property to Gilbert. But that transfer is fairly explained for business reasons. Victoria was in default so heavily that there was little hope of her paying out. Allen preferred taking over the property, which, according to real estate experts, was not salable at a price greater than the incumbrances, although intrinsically worth considerably more in prosperous times. Allen, at a distance, preferred interest-bearing mortgage notes to real estate; and Gilbert doubtless had a sentimental attachment to his old property, and possibly some glee in recovering it from his former wife. There is no indication that Gilbert's acquirement was considered by either of them until after the transfer to Allen.

"The fact that Victoria executed rent notes, agreeing to pay as a tenant for the use of the property which she had transferred to Allen, constitutes another strong line of evidence against her contention. Its effect cannot be avoided except by her vague reasons already stated, and they, of course, are not sufficient for the purpose. The seizure for rent, of furniture already transferred to Allen is explained by the error of the attorney, which he corrected as soon as it was brought to his attention by Allen. The suit under which the seizure was made was filed in the city court of the city of Lake Charles. It is No. 15975 on the docket of this court, pending on devolutive appeal, and tried and submitted in consolidation with No. 15971.

"The conclusion is, first, that there is no proof of fraudulent collusion between Allen and Gilbert to deprive Victoria of her property; second, that while Allen's profits on the various transactions have been excessive, and Victoria's costs and expenditures much larger than she could afford, there is no legal ground to set aside the transactions; and, third, that, from a strict legal standpoint, the debits and credits shown by Allen's account appear to be substantially correct. The court is without jurisdiction to determine any moral issue which might be raised by reason of the advantage accruing to the superior Caucasian business acumen in dealings with the lesser intelligence of the colored race."

The issues herein involve questions of fact only.

The contentions of the litigants have been fully considered and passed upon in the foregoing opinion of the court.

This court, after a thorough examination of the record, has been unable to find any error in the judgment appealed from.

As it is unnecessary for us to repeat what was said by the District Judge, we shall affirm the judgment and it is so ordered at the cost of plaintiff and appellant.